UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN PETERSON,

       Plaintiff,

v.                                                                 Case No. 1:11-CV-953

COMMISSIONER OF SOCIAL                     Hon. ROBERT HOLMES BELL
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on June 9, 1959 (AR 153),[1] and has completed the tenth grade (AR 151).   She has had previous employment as a cleaner, factory team leader, factory worker and packager (AR 146).   Plaintiff alleged a disability onset date of April 5, 2007 (AR 145).   She identified her disabling conditions as a herniated disc and pinched nerve (AR 145).   Plaintiff stated that due to these restrictions she has trouble bending and lifting (AR 145).   On March 4, 2011, an Administrative Law Judge (ALJ) reviewed plaintiff's claims *de novo* and entered a decision denying benefits (AR 11-17).   This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).  "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step.  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the amended onset date of April 5, 2007 and met the insured status requirements of the Social Security Act through December 31, 2010 (AR 13).  At step two, the ALJ found that plaintiff suffered from a severe impairment of spondylosis of the cervical spine with herniated disc at C6-7 (AR 13).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 13-14).  Specifically, the ALJ found that "[a]lthough there is some radiculopathy from the plaintiff's cervical spine, the other findings required for Listing 1.04 [disorders of the spine] are not present" (AR 14).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC) to perform light work exertionally as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b):

> . . .  including lifting twenty pounds occasionally and ten pounds frequently.  She may perform limited reaching in all directions, but may not be permitted to lift overhead with her left upper extremity.  She may perform only occasional tasks with her bilateral hands.  She can stand and/or walk for about six hours in an eight-hour workday with normal breaks and sit for six hours.  She may occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.  She may never climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to extremes of heat or cold, humidity and vibration.

(AR 14-16).  The ALJ further found that plaintiff could not perform any of her past relevant work (AR 16).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 27-28).  Specifically, plaintiff could perform

8,000 jobs such as being an usher/attendant (2,000 jobs), a crossing guard (1,000 jobs) and a custodian (5,000 jobs) (AR 16-17).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 5, 2007 (the alleged disability onset date) through March 4, 2011 (the date of the decision) (AR 17).

### III.  ANALYSIS

Plaintiff has raised two broad issues on appeal.

### A.     The ALJ gave no valid reasons for rejecting plaintiff's reported symptoms and limitations.

Plaintiff contends that the ALJ failed to give valid reasons for finding that she was not credible.  Plaintiff notes that the ALJ mentioned five pieces of evidence with respect to the credibility determination: a positive MRI in March 2007; a negative EMG in September 2007; the lack of more aggressive medical treatment; a doctor's list of permanent restrictions which was not in the record; and the physical therapist's report (that plaintiff had no pain in the affected upper extremity after treatment and a normal range of motion in her cervical spine with minimal discomfort).  Plaintiff's Brief at pp. 8-6 citing AR 15.

In reviewing plaintiff's claim, it is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility.  *See  Siterlet v. Secretary of Health and Human Services*, 823 F. 2d 918, 920 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  An ALJ may discount a claimant's credibility where the ALJ  "finds contradictions among the medical records, claimant's testimony, and other evidence."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.

1972).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling

reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The threshold for overturning an ALJ's

credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed

in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v.

Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010),

and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder

of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th

Cir. Nov. 28, 2007).   Nevertheless, an ALJ's credibility determinations regarding subjective

complaints must be reasonable and supported by substantial evidence.  *Rogers v. Commissioner of

Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

        While it is well-settled that pain may be so severe that it constitutes a disability, a

disability cannot be established by subjective complaints of pain alone.  "An individual's statement

as to pain or other symptoms shall not *alone* be conclusive evidence of  disability."  *Cohen v.

Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting

42 U.S.C. § 423(d)(5)(A) (emphasis added).  Rather, objective medical evidence that confirms the

existence of pain is required.  *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232,

234-235 (6th Cir.1987). When evaluating a claimant's statements of subjective pain, the ALJ is

required to determine the actual intensity and persistence of the claimant's symptoms and how these

symptoms limit the claimant's ability to work.  *Allen v. Commissioner of Social Security*, 561 F.3d

646, 652 (6th Cir. 2009), citing § 404.1529(b) ("The finding that your impairment(s) could

reasonably be expected to produce your pain or other symptoms does not involve a determination

as to the intensity, persistence, or functionally limiting effects of your symptoms") and 20 C.F.R.

§ 404.1529(c) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work.").

In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529). To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

Here, the ALJ found that plaintiff met the first prong of the *Duncan* test, when he found that plaintiff had a severe impairment of spondylosis of the cervical spine with herniated disc at C6-7 (AR 13). However, the record is insufficient to enable the court to determine whether plaintiff met the second prong of the *Duncan* test (i.e., evaluation of the severity of the alleged disabling pain under § 404.1529(c)), because the ALJ's decision does not address plaintiff's subjective complaints. Courts give deference to the ALJ's findings as to a claimant's credibility "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Here, the court cannot evaluate

ALJ's credibility determination because the ALJ did not explain the nature of plaintiff's subjective complaints and the reasons why the ALJ rejected those complaints.[2]   Similarly, the court cannot determine whether the ALJ properly concluded that the objective medical evidence failed to confirm the severity of the alleged pain arising from plaintiff's medical condition or whether the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain when the ALJ failed to address plaintiff's subjective complaints. *See Duncan*, 801 F.2d at 853.  In this regard, the ALJ did not discuss how plaintiff's alleged restrictions affect her activities of daily living.  Such activities are typically considered by an ALJ in determining whether a claimant can perform work-related activities. *See Gist v. Secretary of Health and Human Servs.*, 736 F.2d 352 (6th Cir. 1984) (claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability).

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1).  "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036.  While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence.  It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732

---

[2] The court notes that defendant's brief outlines plaintiff's testimony and descriptions of her impairments in some detail. *See* Defendants' Brief at pp. 2-3, 12 (docket no. 14).  However, defendants' recitation of this information in his brief is not a substitute for the ALJ's failure to address plaintiff's subjective complaints as part of the credibility determination in the original decision.

F.2d 75, 78 (7th Cir.1984).   In Social Security Ruling (SSR) 96-7p, the Social Security

Administration recognized the applicability of this  articulation requirement when discounting a

claimant's credibility.[3]  SSR 96-7p provides in pertinent part:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well- reasoned determination or decision.
>
> In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements.  Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible.  The adjudicator may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1).  While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*,  167 Fed.Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

> credible to a certain degree. For example, an adjudicator may find credible an
> individual's statement that the abilities to lift and carry are affected by symptoms,
> but find only partially credible the individual's statements as to the extent of the
> functional limitations or restrictions due to symptoms; i.e., that the individual's
> abilities to lift and carry are compromised, but not to the degree alleged. Conversely,
> an adjudicator may find credible an individual's statement that symptoms limit his
> or her ability to concentrate, but find that the limitation is greater than that stated by
> the individual.

SSR 96-7p, 1996 WL 374186 at *4-5 (emphasis added).

In summary, the court cannot trace the ALJ's reasoning which supports his determination that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (AR 14). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. 405(g). On remand, the Commissioner should re-evaluate plaintiff's credibility by addressing her alleged symptoms and determining whether the objective medical evidence confirms the severity of the alleged symptoms, or in the alternative, whether the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged symptoms. If the Commissioner finds these claims credible, the he should re-evaluate plaintiff's RFC and the vocational evidence.

## B. The ALJ violated the treating physician rule.

Plaintiff contends that the ALJ improperly evaluated the findings of plaintiff's treating physician, Lawrence Smith, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. The agency regulations provide that if the Commissioner finds that a treating medical source's opinion

on the issues of the nature and severity of a claimant's impairments "is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record, [the Commissioner] will give it controlling weight."

*Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).   An ALJ is not bound by the

conclusory statements of doctors, particularly where the statements are unsupported by detailed

objective criteria and documentation.   *Buxton*, 246 F.3d at 773; *Cohen*, 964 F.2d at 528.   In

summary, the opinions of a treating physician "are only accorded great weight when they are

supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary*

*of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526.   Finally,

the ALJ must articulate good reasons for not crediting the opinion of a treating source.   *See Wilson*

*v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)

("[w]e will always give good reasons in our notice of determination or decision for the weight we

give your treating source's opinion").

Here, the ALJ evaluated Dr. Smith's opinion as follows:

Dr. Lawrence Smith of InterCare Community Health Network performed a medical examination in June 2009.   The physician noted the claimant was tender to palpitation around her cervical spine with radiculopathy into her right upper extremity.   Her right hand also had a weaker gripping ability (Exhibit 14F).

The claimant's representative submitted questions to Dr. Smith after the hearing.   The representative asked somewhat detailed question that outlined the claimant's impairments and her limitations.   The questions appeared to have required just a "yes" or "no" answer from the physician.   Although there is no evidence that Dr. Smith has examined the claimant in nearly a year (Exhibit 16F), he agreed with the attorney's statements regarding the claimant's allegations.   Included were affirmations that the claimant could not reach with her upper extremities because that would stretch the nerves across the cervical spine and that it was reasonable to find the claimant needed to rest her head and neck against the back of a chair or couch after a short time (Exhibit 17F).

The undersigned finds the opinion of Dr. Smith is not fully supported by the record.  Given that he does not have a recent treating relationship with the claimant and he has had infrequent contact with her, the undersigned assigns little weight to the opinion of Dr. Smith.  Moreover, his opinion is inconsistent with the medical record as a whole.

(AR 15).

Plaintiff contends that the ALJ failed to give good reasons for discounting Dr. Smith's opinion because: (1) Dr. Smith was not required to give a simple yes or no answer to the questions, the doctor was also asked to explain his answer; (2) the fact that the doctor last saw plaintiff 11 months prior to issuing his opinion does not impugn the validity of the opinion; (3) the fact that the doctor had infrequent contact with plaintiff does not impugn the doctor's opinion; and (4) the ALJ gave "boilerplate" reasons for rejecting the doctor's opinion, i.e., that the doctor's opinions were "not fully supported by the record" and were "inconsistent with the medical evidence of record as a whole."  Plaintiff's Brief at pp. 17-20.[4]

### 1.    The form questions

The ALJ noted that the form questions presented to Dr. Smith limited the doctor's response to a "yes" or "no" answer.  Plaintiff's counsel submitted three questions to the doctor, with each question containing a narrative of plaintiff's complaints.   The questions are summarized as follows:

In your reports to the Department of Human Services of 7/20/09 and []/7/10, you provided a diagnosis of neck pain with bilateral cervical radiculopathy. (Karen's 3/15/07 MRI revealed a C6-7 disc to the left which according to the radiologist "likely compresses the central aspect of the left 7 nerve root.")  Based on your clinical exams and [this?] MRI, you went on to indicate Karen would have difficulty engaging in simple grasping, reaching, pushing/pulling and fine manipulation.  According to Karen, if she acquired a stand up or sit down job which required her

---

[4] The court notes that defendant did not respond to each claim raised by plaintiff.

to reach out and manipulate small objects for inspection purposes, or reach out and assemble light objects (weighing less than 10 lbs), she would not be able to do it because of pain in her neck and radicular symptoms into her arm/hands.  Is this consistent with your 7/20/09 and 4/7/10 reports and why do these activities increase pain?  Please write your answer here:

        Yes.   Because they stretch the nerve over the disc. [Following statement is illegible.]

        Karen indicates that while she can sit and stand throughout the day, after a relatively short period in either position she has to sit with her head/neck resting against the back of her couch or chair with her head/neck supported to relieve pain. Is this reasonable and why?  Please write your  answer here:

        Yes it is reasonable - because [of ?] neck [and ?] back pain

        Finally, Karen indicates that simply looking down, e.g., at the dishes while in the sink or at papers on a desk for any length of time causes significant neck pain. Is this reasonable and why?  Please write your answer here:

        Yes - because stretching the nerves over the discs

(AR 351-52).

While these questions asked for both a "yes or no" answer, each question also requested a narrative explanation (i.e., a "why" question).  These questions are similar to deposition questions which ask a physician to corroborate a claimant's reported symptoms.  Contrary to the ALJ's characterization, the form provided by plaintiff's counsel gave Dr. Smith the opportunity to provide a narrative response in addition to expressing agreement or disagreement with plaintiff's claims, which he did.  The ALJ did not give good reasons for rejecting these three opinions issued by Dr. Smith.  Accordingly, on remand, the ALJ should re-evaluate the opinions.

### 2.	The length and frequency of the treating relationship

It is unclear exactly when Dr. Smith saw plaintiff.   The records from the doctor's office are generally illegible (AR 339-48).  It appears that Dr. Smith saw plaintiff on March 31, 2010

(AR 340-41).  However the provider's signature on subsequent notes consists of either a squiggly line or an unintelligible scribble (AR 342-48).  In his letter to Dr. Smith, plaintiff's counsel refers to the doctor's previous reports of July 20, 2009 and April 7, 2010 (AR 351).  Finally, the ALJ refers to Exhibit 14F, a medical examination report prepared in July 2009, which reflects that Dr. Smith first examined plaintiff on June 20, 2009 (AR 15, 331-33).

The ALJ could properly discount Dr. Smith's opinions based on the length and frequency of his treatment relationship with plaintiff.  *See* 20 C.F.R. §§ 404.1527(c)(2)(i) and 416.927(c)(2)(i) ("Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.").  Accordingly, the ALJ did not commit error with respect to this issue.

### 3.    The ALJ's use of "boilerplate" language

Plaintiff contends that the court should "throw out" the ALJ's "conclusory boilerplate" findings that Dr. Smith's opinion is "not fully supported by the record" and "inconsistent with the medical records as a whole."  Plaintiff's Brief at p. 17 quoting AR 15.  The ALJ's use of this "boilerplate" language to summarize his conclusions is not erroneous.  ALJ's frequently use the quoted language (or similar language) to summarize their review of medical opinions.  The issue before the court  is whether these conclusions are supported by the record as a whole.  If they are, the inclusion of common terminology does not negate that fact.  Plaintiff's claim that the ALJ improperly used "boilerplate" language should be denied.

## IV.     Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate plaintiff's credibility by addressing her alleged symptoms and determining whether the objective medical evidence confirms the severity of the alleged symptoms, or in the alternative, whether the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged symptoms.  In addition, the Commissioner should re-evaluate the three opinions issued by Dr. Smith after plaintiff's hearing (AR 351-52).  If the Commissioner finds plaintiff's claims credible after these re-evaluations, the he should re-evaluate plaintiff's RFC and the vocational evidence.

Dated:  June 15, 2012                                   /s/ Hugh W. Brenneman, Jr.
                                                                   HUGH W. BRENNEMAN, JR.
                                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).